IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

PANEL SYSTEMS, INC., )
    Plaintiff, )
)
      v. )    Civil No. 3:18-cv-687 (DJN)
)
SELECTIVE INSURANCE COMPANY )
OF AMERICA, )
    Defendant. )
_____ )

## MEMORANDUM OPINION

Plaintiff Panel Systems, Inc. ("Panel Systems") brings this action against Defendant Selective Insurance Company of America ("Selective"), alleging that Selective breached its contractual duty to defend Panel Systems and to indemnify it for all costs, claims and expenses, including the settlement payout and attorneys' fees, arising out of the litigation styled *Virginia Commonwealth University Health System Authority, et al. v. Panel Systems, Inc., et al.*, Civil Action Number 3:18-cv-43-REP (E.D. Va.). This matter comes before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on Selective's Motion for Judgment on the Pleadings (ECF No. 15), moving pursuant to Federal Rules of Civil Procedure 12(h)(2)(B) and 12(c) to enter judgment in its favor on all claims in Panel Systems' Complaint (ECF No. 1).[1] For the reasons set forth below, the Court orders that Selective's Motion for Judgment on the Pleadings (ECF No. 15) be DENIED.

---

[1]    The Court finds that it has subject matter jurisdiction over Panel Systems' claims pursuant to 28 U.S.C. § 1332, because Panel Systems, a Virginia corporation with its principal place of business in Woodbridge, Virginia, and Selective, a New Jersey corporation with its principal place of business in Branchville, New Jersey, constitute completely diverse parties and the amount in controversy exceeds $75,000. (Compl. ¶¶ 2-4, 43, 48.)

## I.    BACKGROUND

A Rule 12(c) motion for judgment on the pleadings utilizes the same standard as a

12(b)(6) motion. *Moore v. Franklin Credit Mgmt. Corp.*, 2010 WL 1308048, at *1 (E.D. Va.

Apr. 2, 2010).  Accordingly, in considering Selective's Motion, the Court will view the facts in

the light most favorable to Panel Systems, reserving its own judgment as to legal conclusions or

unwarranted inferences. *Watkins v. SunTrust Mortg., Inc.*, 2010 WL 2812910, at *1 (E.D. Va.

July 15, 2010); *Hudson v. Bank of Am., N.A.*, 2010 WL 2365588, at *1 (E.D. Va. June 11, 2010).

### A.    Panel Systems' Health Plan and Insurance Contract with Selective

Panel Systems designs, manufactures and erects prefabricated steel buildings, employing

fewer than eighty people. (Compl. (ECF No. 1) ¶ 7.)  In 2014, Panel Systems implemented the

Panel Systems Health Care Plan (the "Plan") to provide healthcare benefits to its employees.

(Compl. ¶ 8.)  Panel Systems "self-funded" the Plan, meaning that the company and its

employees contributed to the benefits provided by the Plan.  (Compl. ¶ 8.)  At some point after

2014, Panel Systems engaged Self Insured Services Company ("SISCO") to serve as the third-

party administrator of the Plan.  (Compl. ¶ 9.)  In its role as Plan administrator, SISCO

adjudicated all claims made under the Plan, submitted stop-loss claims to the excess loss carrier

and processed payments for those claims covered by the Plan.  (Compl. ¶ 9.)

Effective February 1, 2017, Panel Systems purchased a Commercial General Liability

Insurance Policy, Policy No. S 1886319 (the "Policy"), from Selective, with an expiration date of

February 1, 2018.  (Compl. ¶ 11.)  The Policy included an endorsement (the "Endorsement") that

provided coverage for "those sums that [Panel Systems] bec[ame] legally obligated to pay as

damages because of any act, error, or omission, of [Panel Systems], or of any other person for

whose acts [Panel Systems] is legally liable, to which this insurance applies." (Compl. ¶¶ 11-12;

2

Compl. Ex. B ("Endorsement") (ECF No. 1-3) § A.1.a.)  The Endorsement further provided that Selective had a right and duty to defend Panel Systems "against any 'suit' seeking . . . damages [covered by the Endorsement]." (Endorsement § A.1.a.)  However, the Endorsement required Selective to defend against or cover damages associated with a relevant lawsuit only if, among other things, "[t]he act, error or omission, [was] *negligently* committed in the '*administration*' of [the Plan]." (Endorsement § A.1.b. cl. (1) (emphasis added).)  Moreover, the Endorsement specifically excluded coverage for damages arising out of, among other things:  (1) "any intentional, dishonest, fraudulent, criminal or malicious act, error or omission;" (2) "failure of performance of contract by any insurer;" (3) "liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974" ("ERISA"); and (4) "[a]ny claim for benefits to the extent that such benefits are available . . . from the applicable funds accrued or other collective insurance." (Endorsement § A.2.a., c., g., h.)

**B.      M.L. Benefits Dispute**

On May 11, 2016, M.L.,[2] a beneficiary of the Plan and dependent of a Panel Systems employee, presented to the Medical College of Virginia Hospital ("MCV Hospital") after asphyxiating on a kernel of popcorn. (Compl. ¶ 15.)  On May 17, 2016, MCV Hospital physicians informed M.L.'s parents that M.L. had no brain activity and that they wished to perform an apnea test to confirm their diagnosis. (Compl. ¶ 15.)  To prevent the apnea test, M.L.'s parents sought an injunction from the Circuit Court for the City of Richmond against the Virginia Commonwealth University Health Systems Authority (the "Authority"). (Compl. ¶ 16.)

---

[2]      In keeping with the prior litigation on this matter and the parties' practice, the Court will refer to M.L. by her initials to respect the privacy of her family.

While litigation relating to the apnea test worked its way up to the Virginia Supreme Court, M.L. remained hospitalized at MCV Hospital, accruing costs associated with her care and treatment. (Compl. ¶¶ 16-18.) MCV Associated Physicians submitted claims for M.L.'s medical costs to SISCO. (Compl. ¶ 18.) On September 21, 2016, SISCO found that M.L.'s medical costs proved medically unnecessary, as defined under the Plan, because MCV Hospital physicians had declared M.L. brain-dead in May 2016. (Compl. ¶ 19.) Accordingly, on October 10, 2016, SISCO directed its Audit Unit to deny all claims relating to costs incurred in treating M.L. after May 31, 2016 (the "post-May 31 expenses"), the date on which MCV Hospital physicians had declared M.L. brain-dead. (Compl. ¶¶ 20, 23.) SISCO also sought reimbursement from the Authority for amounts already paid for the post-May 31 expenses. (Compl. ¶¶ 20, 23.) Meanwhile, M.L. remained under the care of MCV Hospital until her passing on November 1, 2016, incurring a total of $1,682,066.77 in medical expenses. (Compl. ¶¶ 21-22.)

In response to SISCO's refusal to pay and request for a refund, MCV Associated Physicians filed an appeal with SISCO, which SISCO denied. (Compl. ¶¶ 23-24.) However, SISCO agreed to review M.L.'s claims if MCV Associated Physicians submitted additional documents showing why the Plan covered the post-May 31 expenses. (Compl. ¶ 24.) On March 10, 2017, MCV Associated Physicians and the Authority submitted M.L.'s medical records to SISCO. (Compl. ¶ 25.) Considering those records, on April 21, 2017, SISCO reaffirmed that the Plan did not cover the post-May 31 expenses, because such expenses resulted from medically unnecessary care. (Compl. ¶ 26.)

On May 10, 2017, the Authority and MCV Associated Physicians appealed SISCO's second denial of coverage, and, on May 15, 2017, SISCO reversed its previous decision, deciding that the Plan in fact covered the post-May 31 expenses. (Compl. ¶¶ 27-28.)

### C.    MCV Lawsuit

Despite SISCO's decision to grant coverage, the Authority and MCV Associated Physicians (collectively, the "MCV Plaintiffs") never received payment for the post-May 31 expenses. (Compl. ¶ 28.) Accordingly, on January 18, 2018, the MCV Plaintiffs sued Panel Systems, the Plan and SISCO in this Court (the "MCV Lawsuit"). *Va. Commonwealth Univ. Health Sys. Auth. v. Panel Sys., Inc.*, Civil No. 3:18-cv-43-REP (E.D. Va.); (Compl. ¶ 29). The MCV Plaintiffs alleged three counts in their complaint. (Answer Ex. 2A ("MCV Compl.") (ECF No. 5-2) ¶¶ 51-80.) [3]

In Count I, the MCV Plaintiffs sought payment of M.L.'s medical expenses pursuant to 29 U.S.C. § 1132(a)(1)(B), which provides a participant or beneficiary of an ERISA plan with the right "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." (MCV Compl. ¶¶ 51-66.) The MCV Plaintiffs argued that M.L.'s medical treatment met the Plan's definition of medically necessary care; therefore, the Plan obligated Panel Systems and

---

[3]    The Court may rely on the MCV Complaint to test the sufficiency of Panel Systems' claims, because Panel Systems incorporated the MCV Complaint into its Complaint, (Compl. ¶ 29), and Selective attached the MCV Complaint to its Answer, (ECF No. 5-2). Moreover, neither party disputes the MCV Complaint's authenticity, and the MCV Complaint proves integral to whether Selective had a duty to defend and indemnify Panel Systems in the MCV Lawsuit. *Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that courts considering motions to dismiss may look at documents explicitly incorporated by reference into a complaint); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that courts considering motions to dismiss may also consider a document that proved "integral to the complaint," so long as "there is no dispute about the document's authenticity").

SISCO to pay the MCV Plaintiffs, as M.L.'s assignees under the Plan, for the cost of such treatment. (MCV Compl. ¶¶ 56-66.)

In Count II, the MCV Plaintiffs argued, in the alternative, that Panel Systems and SISCO served as fiduciaries of the Plan under ERISA and therefore owed a duty of care, skill, prudence and diligence to the Plan's beneficiaries, including M.L. (MCV Compl. ¶¶ 67-70.) The MCV Plaintiffs alleged that Panel Systems and SISCO breached their fiduciary duties under ERISA, entitling the MCV Plaintiffs to surcharge, reformation and/or estoppel under 29 U.S.C. § 1132(a)(3), which provides a participant, beneficiary or fiduciary of an ERISA plan with a right to seek equitable relief to enforce the Act or the plan, or to remedy violations of the Act. (MCV Compl. ¶¶ 71-74.)

Finally, in Count III, the MCV Plaintiffs sought a declaratory judgment that the Plan obligated Panel Systems and SISCO to pay for the post-May 31 expenses, or, in the alternative, that the defendants breached their fiduciary duties under ERISA. (MCV Compl. ¶ 80.) The MCV Plaintiffs further sought a declaration that SISCO had no right to a refund under the Plan. (MCV Compl. ¶ 80.)

### D.    Coverage Dispute with Selective

On January 31, 2018, Panel Systems notified Selective about the MCV Lawsuit and requested that Selective defend the company pursuant to the Endorsement. (Compl. ¶ 31.) On February 21, 2018, Panel Systems' President, Barry Unger ("Unger"), called Selective's Claims Specialist, Mike Mancuso ("Mancuso"), to provide additional information regarding the MCV Lawsuit and Panel Systems' position. (Compl. ¶ 32.) Following the phone call with Unger, Mancuso, on behalf of Selective, denied coverage for damages resulting from the MCV Lawsuit and notified Panel Systems that Selective would not defend the company. (Compl. ¶ 33.)

Selective identified three reasons for denying coverage to Panel Systems, namely that: (1) the Endorsement covered only damages arising from a negligent act, error or omission in the administration of the Plan, whereas Panel Systems' actions in relation to the MCV Lawsuit constituted willful conduct; (2) the damages sought by the MCV Plaintiffs ultimately resulted from the Plan's and the excess loss insurer's failure to cover M.L.'s expenses, which fell within the Endorsement's explicit exclusion for failure by an insurer to perform under a contract; and, (3) the Endorsement did not cover damages arising out of a breach of a fiduciary duty under ERISA and therefore did not cover the MCV Plaintiffs' fiduciary duty claims. (Compl. ¶¶ 34-36.)

In response to Selective's denial of coverage, on April 30, 2018, Panel Systems, by counsel, sent a letter to Mancuso, asking that Selective reconsider its coverage position and explaining why Panel Systems believed that Selective had reached the wrong conclusions. (Compl. ¶ 39; Compl. Ex. C ("April 2018 Letter") (ECF No. 1-4) at 1-5.) Specifically, as to Selective's finding that the MCV Lawsuit related only to Panel Systems' willful conduct, Panel Systems contended that Selective lacked "a factual basis" for such an assertion. (April 2018 Letter at 2.) Rather, Panel Systems argued that the evidence available showed that Panel Systems "properly denied benefits to M.L. based on the Plan's language" or merely made a negligent error in interpreting the Plan. (April 2018 Letter at 2-3.) As to Selective's determination that the MCV Lawsuit constituted a lawsuit for damages arising out of the Plan's and the excess loss insurer's failure to perform under a contract, Panel Systems explained that the MCV Plaintiffs suffered no damages under the Plan and that, even if they did, such damages resulted from SISCO's — not an insurer's — failure to perform. (April 2018 Letter at 4.) Finally, Panel Systems challenged Selective's conclusion that the MCV Lawsuit sought damages

for breach of fiduciary duties under ERISA, explaining that the MCV Plaintiffs' claim for breach of fiduciary duty under ERISA proved procedurally improper in light of the Fourth Circuit's holding in *Korotynska v. Metro Life Insurance Company*, 474 F.3d 101, 106-07 (4th Cir. 2006), which held that an ERISA plaintiff seeking unpaid benefits should utilize 29 U.S.C. § 1132(a)(1)(B) and may not also receive equitable relief under 29 U.S.C. § 1132(a)(3) in the same action. (April 2018 Letter at 4.) Because the MCV Plaintiffs, if successful, would receive adequate monetary relief under § 1132(a)(1)(B), Panel Systems reasoned that the MCV Plaintiffs could not also seek or receive equitable relief under § 1132(a)(3), and that such a claim would not survive summary judgment. (April 2018 Letter at 4.) Arguing that Selective should have looked more closely at the merits of the MCV Plaintiffs' claims before denying coverage, Panel Systems asked Selective to reconsider. (April 2018 Letter at 5.)

Upon receiving Panel Systems' letter, Selective refused to reconsider its decision or investigate Panel Systems' arguments, and, on July 6, 2018, Mancuso sent an email to Panel Systems, reiterating that Selective would not provide coverage for Panel Systems' defense or indemnify Panel Systems for any damages resulting from the MCV Lawsuit. (Compl. ¶ 41; Compl. Ex. D ("July 2018 Email") (ECF No. 1-5) at 1.)

On July 18, 2018, the parties agreed to a settlement of the MCV Lawsuit for a confidential amount, part of which Panel Systems agreed to pay. (Compl. ¶ 43.) Panel Systems notified Selective about the settlement on August 15, 2018, and again asked that Selective reconsider its denial of coverage. (Compl. ¶ 45.) On August 31, 2018, Panel Systems' counsel followed up with Mancuso, advising him that if Selective did not reverse its decision, Panel Systems would file a lawsuit. (Compl. ¶ 46.) Selective again refused to reconsider and Panel Systems filed suit in this Court on October 9, 2018. (ECF No. 1.)

### D.     Panel Systems' Complaint

Based on the above facts, Panel Systems alleged that Selective acted in bad faith and breached the Endorsement by refusing to defend or indemnify Panel Systems in the MCV Lawsuit. (Compl. ¶ 49.) For Selective's alleged breach of the Endorsement, Panel Systems seeks monetary damages for all fees, costs and expenses stemming from the MCV Lawsuit. (Compl. at 9.) Further, because Selective allegedly acted in bad faith, pursuant to Va. Code § 38.2-209, Panel Systems seeks reasonable attorneys' fees and costs incurred in prosecuting the instant matter. (Compl. at 9.)

### E.     Selective's Motion for Judgment on the Pleadings

On January 9, 2019, Selective filed its Motion for Judgment on the Pleadings (ECF No. 15), moving this Court to grant judgment in Selective's favor on all claims in Panel Systems' Complaint. In support of its Motion, Selective argues that it had no duty to defend or indemnify Panel Systems in the MCV Lawsuit, because: (1) the MCV Plaintiffs alleged that Panel Systems committed intentional and deliberate acts, errors or omissions, whereas the Endorsement covered only claims for Panel Systems' negligent acts, errors or omissions; (2) even if the MCV Plaintiffs alleged negligent acts, errors or omissions by Panel Systems, such acts, errors or omissions did not pertain to Panel Systems' "administration" of the Plan, and thus fell outside the Endorsement's coverage; and, (3) Counts II and III of the MCV Complaint requested equitable and declaratory relief, for which the Endorsement provided no coverage. (Br. Supp. Def.'s Mot. for J. on the Pleadings ("Def.'s Mem.") (ECF No. 16) at 11-19.)

Selective further argues that the MCV Lawsuit fell within the Endorsement's explicit exclusions. (Def.'s Mem. at 19-21.) Specifically, Selective contends that Panel Systems' settlement payout constituted unpaid benefits that Panel Systems could pay through its

agreement with the Plan's excess loss carrier TransAmerica Premier Life Insurance Company ("TransAmerica"), rendering the payout "benefits . . . available . . . from applicable funds accrued or other collectible insurance." (Def.'s Mem. at 19-20 (citing Endorsement § A.2.h.).) Selective also contends that Panel Systems' settlement payout constituted "[d]amages arising out of failure of performance of contract by any insurer," because the payout reflected benefits that TransAmerica and the Plan failed to cover. (Def.'s Mem. at 19-20 (citing Endorsement § A.2.c.).) And Selective maintains that Count II of the MCV Complaint fell within the Endorsement's exclusion for claims relating to liability imposed on a fiduciary under ERISA. (Def.'s Mem. at 20-21.)

On January 30, 2019, Panel Systems filed its Memorandum in Opposition to Selective's Motion, (Pl.'s Mem. Opp. Def.'s Mot. for J. on the Pleadings ("Pl.'s Mem.") (ECF No. 20)), to which Selective replied on February 8, 2019, (Reply in Supp. of Def.'s Mot. for J. on the Pleadings ("Def.'s Reply") (ECF No. 21)), rendering Selective's Motion ripe for review.

## II. STANDARD OF REVIEW

As mentioned, a Rule 12(c) motion for judgment on the pleadings utilizes the same standard as a 12(b)(6) motion. *Moore*, 2010 WL 1308048, at *1. Therefore, a motion for judgment on the pleadings tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citations omitted). In considering a motion for judgment on the pleadings, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.2d 1130, 1134 (4th Cir.

1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### III.   CHOICE OF LAW

As a threshold matter, this Court must first determine the substantive law against which to measure the plausibility of Panel Systems' claims. Because Panel Systems alleged breach of contract — a state-law claim — this Court, sitting in diversity, must apply the substantive law of the state in which it sits, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

In Virginia, absent a choice-of-law provision, "the law of the place where an insurance contract is written and delivered controls issues as to its coverage." *Buchanan v. Doe*, 431

S.E.2d 289, 291 (Va. 1993). Here, neither the Policy nor the Endorsement included a choice-of-law provision. Accordingly, the place where Selective delivered the Policy and the Endorsement governs their interpretation. Selective delivered both the Policy and the Endorsement to Panel Systems, a Virginia corporation with its headquarters in Virginia. (Compl. ¶ 2; Def.'s Mem. at 10 n.5.) Therefore, Virginia law governs Panel Systems' breach-of-contract claim.

## IV.    ANALYSIS

As discussed, Panel Systems alleged that Selective breached the Endorsement by failing to defend and indemnify Panel Systems in the MCV Lawsuit. Panel Systems further alleged that Selective did so in bad faith, entitling Panel Systems to the reasonable attorneys' fees and costs incurred in prosecuting the instant matter. Because "'the obligation to defend is broader than [the] obligation to pay,'" *Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 475 S.E.2d 264, 268 (Va. 1996) (quoting *Lerner v. Safeco*, 245 S.E.2d 249, 251 (Va. 1978)), the Court will first consider whether Panel Systems has alleged sufficient facts to state a plausible right to relief under the Endorsement's duty-to-defend provisions.

### A.    Panel Systems Stated a Plausible Claim that Selective Breached the Endorsement by Failing to Defend Panel Systems in the MCV Lawsuit.

In Virginia, an insurer who agrees to defend an insured must defend a suit against the insured "whenever the [third-party] complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *Lerner*, 245 S.E.2d at 251; *see also Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 791 (E.D. Va. 2001) (describing this principle as the "Potentiality Rule"). Conversely, if, "under the allegations of the complaint, [the insurer] would not be liable under its contract for *any* recovery therein had," the insurer has no obligation to defend the insured. *Id.* (emphasis added) (citing *Travelers Indem. Co. v. Obenshain*, 245 S.E.2d 247, 249 (Va. 1978)). Accordingly, courts determine an insurer's duty to

defend based upon a comparison of the allegations in the third-party complaint with the terms of the insurance policy. *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990); *see Nautilus Ins. Co. v. Strongwell Corp.*, 968 F. Supp. 2d 807, 812 (W.D. Va. 2013) (describing the comparison of the third-party complaint with the terms of the policy as the "Eight Corners Rule" (internal citations omitted)); *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012) (holding that "only the allegations in the [third-party] complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty [to defend]"). Should an insurer decide not to defend an insured, it does so at its own risk, for if the facts subsequently develop such that the third-party allegations fall within the risks covered by the insurance policy, the insurer will become liable for breach of its covenant to defend. *Brenner*, 397 S.E.2d at 102 (internal citations omitted). And an insurer retains its obligation to defend an insured even if the claims that originally fell within the covered risks prove meritless and the insurance policy no longer obligates the insurer to indemnify the insured for the damages awarded. *Va. Elec. & Power Co.*, 475 S.E.2d at 266.

To determine whether a third-party complaint presents claims that, if proved, would fall within the risks covered by an insurance policy, the burden falls upon the insured to prove coverage. *Nautilus Ins. Co.*, 968 F. Sup. 2d at 812. Virginia courts construe coverage provisions using standard rules of contract interpretation, including the tenet that unambiguous policy terms receive their plain and ordinary meaning. *Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 93 (4th Cir. 2003); *Town Crier, Inc. v. Hume*, 721 F. Supp. 99, 101 (E.D. Va. 1989). That said, courts will construe exclusionary and ambiguous language in a policy most strongly against the insurer, with the burden falling upon the insurer to prove that an exclusion applies. *Am. Online, Inc.*, 347 F.3d at 93; *Va. Elec. & Power Co.*, 475 S.E.2d at 266 (citing *Johnson v.*

*Ins. Co. of N. Am.*, 350 S.E.2d 616, 619 (Va. 1986)). In proving that an exclusion applies, an

insurer must utilize only the eight corners of the third-party complaint and the insurance policy.

*See Nautilus Ins. Co.*, 968 F. Supp. 2d at 813 (explaining that "'[a]llowing an insurer to point to

facts outside the pleadings to demonstrate that it would ultimately have no duty to *indemnify* as

proof that it has no duty to *defend* would render the two duties indistinguishable and thus

effectively depreciate the duty to defend'" (emphasis supplied) (quoting *Capital Envtl. Servs.,*

*Inc. v. N. River Ins. Co.*, 536 F. Supp. 2d 633, 642 (E.D. Va. 2008))).

Here, the Endorsement provided that Selective had a right and duty to defend Panel

Systems "against any 'suit' seeking . . . [covered] damages." (Endorsement § A.1.a.) The

Endorsement covered damages only if, among other things, "[t]he act, error or omission [at issue

in the suit], [was] *negligently* committed in the '*administration*' of [the Plan]." (Endorsement

§ A.1.b. cl. (1) (emphasis added).) The Endorsement defined "administration" to mean: (a)

"[p]roviding information to 'employees', including their dependents . . ., with respect to [their]

eligibility for or [the] scope of 'employee benefit programs;'" (b) "[h]andling records in

connection with the 'employee benefit program;'" or, (c) "[e]ffecting, continuing or terminating

any 'employee's' participation in any benefit included in the 'employee benefit program.'"

(Endorsement § G.1.a-c.) "Employee benefit program(s)" included group health insurance plans

like the Plan at issue here. (Endorsement § G.4.a.)

### 1. The Factual Allegations of the MCV Complaint Presented a Potentiality that Panel Systems Committed Negligent Acts Covered by the Endorsement.

Selective argues that the Endorsement's coverage provisions did not extend to the types

of allegations at issue in the MCV Lawsuit, in part, because the MCV Plaintiffs alleged that

Panel Systems committed only intentional or deliberate acts in breach of the Plan, which the

Endorsement did not cover. (Def.'s Mem. at 11-17.) Selective cites to three primary cases —

*Baylor Heating & Air Conditioning, Inc. v. Federated Mutual Insurance Co.*, 987 F.2d 415 (7th Cir. 1993) (applying Indiana law); *Group Voyagers, Inc. v. Employers Insurance of Wausau*, 2002 WL 356653, at *2 (N.D. Cal. Mar. 4, 2002), *aff'd*, 66 F. App'x 740 (9th Cir. 2003) (applying California law); and, *First Southern Insurance Company v. Jim Lynch Enterprises, Inc.*, 932 F.2d 717 (8th Cir. 1991) (applying Missouri law) — in support of its proposition that deliberate acts in violation of an ERISA Plan cannot constitute negligent acts. (Def.'s Mem. at 12-17.) However, none of the cases to which Selective cites applied Virginia law, rendering their holdings less persuasive.

Indeed, although Panel Systems likewise cites to cases from outside Virginia, (Pl.'s Mem. at 12-14), it provides the only case involving the application of Virginia law to support its proposition that a negligent act, error or omission may precipitate a breach of an ERISA plan and nonetheless remain covered by a negligence-only insurance policy, (Pl.'s Mem. at 14-15 (citing *Transcon. Ins. Co. v. Caliber One Indem. Co.*, 367 F. Supp. 2d 994 (E.D. Va. 2005))).

In *Transcontinental Insurance*, Caliber One Indemnity Company disclaimed its duty to defend against a lawsuit claiming breach of contract, because it believed that the underlying policy's "negligent error, act or omission" language covered only those claims formally pleaded under a negligence theory. 367 F. Supp. 2d at 1002. Finding no Virginia caselaw addressing whether negligence-only coverage extended the duty to defend to suits for breach of contract, the court interpreted the word "negligent" to include negligent actions that might precipitate a breach of contract. *Id.* at 1002-03. Ultimately, the court held that it would "look to the nature of the act the insured is alleged to have committed, *i.e.*, intentional or unintentional, rather than to the form of action pleaded to determine whether coverage and/or a duty to defend exists." *Id.* at 1003 (internal citations omitted). The court reasoned that a nature-of-the-act interpretation of

"negligent" agreed with the "commonsense proposition that an insured purchases professional liability insurance to protect it[self] from its own failures and cannot readily control whether it is sued for those failures in tort or contract," especially considering that Virginia law proscribes a separate action in tort for harm that arises solely from breach of a contractual duty. *Id.* (citing *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988)); *see also Premier Pet Prods., LLC v. Travelers Prop. Cas. Co. of Am.*, 678 F. Supp. 2d 409, 416 (E.D. Va. 2010) (noting that "[t]he nature of the policyholder's conduct trumps the form of the action pleaded" (citing *Transcon. Ins.*, 367 F. Supp. 2d at 1004)); *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (holding that "[a] tort action cannot be based solely on a negligent breach of contract" and contemplating that negligent actions may breach a contract); *Gerald M. Moore & Son, Inc. v. Drewry*, 467 S.E.2d 811, 813 (Va. 1996) (contemplating that an agent could negligently perform a contract and thereby breach the contract). Finding the logic of the *Transcontinental Insurance* decision persuasive and seeing no reason to distinguish this case at this early stage, the Court will apply the nature-of-the-act interpretation of "negligent" to determine whether the MCV Complaint alleged negligent acts by Panel Systems.

In their complaint, the MCV Plaintiffs alleged that both SISCO and Cigna Health Management, Inc. ("Cigna"), the Plan's medical management company, originally determined that M.L.'s medical care through November 1, 2016 fell within the Plan's definition of medically necessary treatment. (MCV Compl. ¶¶ 10, 23-26.) According to the MCV Plaintiffs, through mid-October 2016, Cigna and SISCO paid for some of M.L.'s medical expenses and informed the Authority that they continued to process the claims for additional treatment costs. (MCV Compl. ¶ 31.) After M.L.'s passing, the MCV Plaintiffs alleged that SISCO confirmed that the

Plan would cover services provided through November 1, 2016, but that the Plan would not cover any services ordered by a court. (MCV Comp. ¶¶ 38-39.) On November 29, 2016, SISCO informed the Authority that it would pay only for those services provided before May 31, 2016, stating that M.L.'s post-May 31 treatment constituted court-ordered and medically unnecessary care that fell outside the Plan's coverage. (MCV Compl. ¶ 42.) And, on January 19, 2017, the MCV Plaintiffs alleged that Panel Systems concurred with SISCO that the Plan did not cover M.L.'s post-May 31 expenses, adding that Panel Systems denied coverage only because SISCO had denied coverage. (MCV Compl. ¶¶ 46, 73.)

The MCV Plaintiffs then appealed Panel Systems' and SISCO's denial of coverage to Cigna. (MCV Compl. ¶ 48-49.) On July 11, 2017, Cigna approved all of M.L.'s treatment expenses and forwarded its decision to SISCO. (MCV Compl. ¶ 49.) However, at the time of the MCV Lawsuit, SISCO had "failed or refused to respond to [Cigna's appellate decision], and the Plan ha[d] failed to pay [the MCV] Plaintiffs for Medically Necessary hospital and professional services provided to M.L." (MCV Compl. ¶ 50.) Based on these facts, the MCV Plaintiffs raised the three counts of their complaint.

The Court finds that the MCV Plaintiffs alleged potentially negligent actions on the part of Panel Systems. Although the MCV Plaintiffs ultimately characterized Panel Systems' and SISCO's actions as a breach of the Plan and their fiduciary duties under ERISA, negligent actions by Panel Systems plausibly formed the basis for that breach. Indeed, the MCV Plaintiffs directed the brunt of their allegations toward SISCO and Cigna, not Panel Systems. And Panel Systems' actions — at least on the face of the MCV Complaint — amounted to a mere rubberstamp of SISCO's decisions. (MCV Compl. ¶¶ 46, 73.) Thus, rather than deliberate and intentional conduct, the MCV Plaintiffs' allegations against Panel Systems suggested

carelessness and an absence of due diligence, resembling the claims in *Transcontinental Insurance*. (*Compare* MCV Compl. ¶ 73 (alleging that Panel Systems "only refused to pay for M.L.'s hospitalization and professional services because [SISCO] denied coverage")), *with Transcon. Ins.*, 367 F. Supp. 2d at 997 (stating that the underlying claims involved allegations of "failing properly to inspect, open, and drain the [fire suppression] system," "failing properly to inspect the system" and "failing to perform . . . work . . . in a good and workmanlike manner" (internal quotations omitted)).

In its Reply, Selective attempts to distinguish the claims in *Transcontinental Insurance* from those at issue here by characterizing the *Transcontinental Insurance* claims as "inadvertent failures with regard to inspection and maintenance of [a] fire suppression system" and Panel Systems' alleged actions as a "thoroughly considered course of conduct." (Def.'s Reply at 6 (emphasis supplied).) However, the Court's own reading of the MCV Complaint suggests that SISCO — not Panel Systems — acted with thorough consideration of its actions, and that Panel Systems merely acted with inattention and carelessness in approving SISCO's decisions, which proves analogous to the intentional, though inattentive, inspections in *Transcontinental Insurance*. Indeed, "'[n]egligence' conveys the idea of heedlessness, inattention, and inadvertence," but does not require complete unintentionality as Selective argues. 3 Am. Law of Torts § 10:17 (2018); *see also* 65 C.J.S. Negligence § 86 (2019) (stating that "[ordinary negligence] merely denotes a negative quality in a person *attending to* or *discharging* a duty" (emphasis added)). If the Court adopted Selective's interpretation of "negligent," the Endorsement would cover only those acts or errors for which Panel Systems intended no result, which defies common sense given that Panel Systems purchased the Endorsement to cover claims relating to the "administration" of the Plan. (Def.'s Reply at 7 (arguing that "if the

actionable conduct . . . was conscious/intended, then coverage [was] lacking [under the Endorsement]"); Endorsement § A.1.b. cl. (1).) To administer the Plan, Panel Systems must act with at least some intention.

Moreover, to the extent that the MCV Plaintiffs raised allegations of intentional wrongdoing by Panel Systems, such intentionality proves ambiguous. For example, although the MCV Plaintiffs stated that Panel Systems "knowingly participated in, caused, and/or contributed to SISCO's breach of fiduciary duty," in the same paragraph, the MCV Plaintiffs also alleged that Panel Systems "failed to make reasonable efforts, under the circumstances[,] to remedy SISCO's breach when it came to Panel Systems' attention," suggesting that Panel Systems acted negligently or not at all. (MCV Compl. ¶ 72.) Because Virginia courts construe ambiguity in duty-to-defend decision-making against the insurer, and because the Potentiality Rule requires only that *some* of the facts or circumstances pled fall within the risks covered by an insurance policy, the Court finds that Panel Systems has plausibly stated that Selective had a duty to defend it under the Endorsement's "negligent act, error or omission" language. *See Transcon. Ins.*, 367 F. Supp. 2d at 1003 ("[T]he insurer owes a duty to defend even when the pleadings do not clearly allege an unintentional breach.").

### 2. The Factual Allegations of the MCV Complaint Presented a Potentiality that Panel Systems Committed Negligent Acts in the "Administration" of the Plan.

Selective contends that, even if the MCV Plaintiffs alleged negligent acts, errors or omissions by Panel Systems, such acts, errors or omissions did not involve the "administration" of the Plan as required by the Endorsement's coverage provisions. (Def.'s Mem. at 17-18.) Specifically, because the MCV Complaint alleged no facts relating to Panel Systems' (a) handling of Plan records, (b) termination of employee participation in the Plan or (c) provision of information to employees regarding their eligibility for, or the scope of, the Plan, Selective

argues that the MCV Lawsuit fell outside of the risks covered by the Endorsement. (Def.'s Mem. at 17.) Panel Systems responds that the MCV Complaint included explicit allegations that Panel Systems failed to provide information with respect to M.L.'s eligibility for the Plan, the scope of the Plan and M.L.'s participation in the Plan, all of which fall within the Endorsement's definition of "administration." (Pl.'s Mem. at 16 (citing MCV Compl. ¶ 69).) And Panel Systems adds that the Court should broadly construe "administration" to include more than merely ministerial tasks. (Pl.'s Mem. at 16-17.)

As mentioned, the Endorsement required Selective to defend Panel Systems, only if, among other things, "[t]he act, error or omission [at issue in the suit], [was] negligently committed in the '*administration*' of [the Plan]." (Endorsement § A.1.b. cl. (1) (emphasis added).) The Endorsement defined "administration" to mean: (a) "[p]roviding information to 'employees', including their dependents . . ., with respect to [their] eligibility for or [the] scope of 'employee benefit programs;'" (b) "[h]andling records in connection with the 'employee benefit program;'" or, (c) "[e]ffecting, continuing or terminating any 'employee's' participation in any benefit included in the 'employee benefit program.'" (Endorsement § G.1.a-c.) "Employee benefit program(s)" included group health insurance plans like the one at issue here. (Endorsement § G.4.a.)

The Court finds that Panel Systems has alleged a plausible right to coverage under the Endorsement's definition of "administration." As Panel Systems points out, the MCV Complaint included explicit allegations that Panel Systems: (a) failed "to provide M.L. and the [MCV] Plaintiffs with accurate information regarding coverage under the Plan;" (b) provided "materially misleading information to M.L. and the [MCV] Plaintiffs regarding coverage;" and, (c) failed "to provide M.L.'s personal representative and the [MCV] Plaintiffs with written notice that it was

denying the claim for benefits and the basis for that determination." (MCV Compl. ¶ 69.) Although these factual allegations appear under only Count II of the MCV Complaint, they potentially related also to the claims in Count I, and the MCV Plaintiffs explicitly incorporated the allegations into Count III. (MCV Compl. ¶ 75.) Indeed, Panel Systems' denial of the post-May 31 expenses necessarily required the provision of information to M.L.'s father (an employee) and M.L. (a dependent) regarding the scope of the Plan, plausibly placing Panel Systems' alleged actions within the Endorsement's definition of "administration." (MCV Compl. ¶ 46; Endorsement § G.1.a.)

Moreover, to the extent that Selective invites the Court to adopt its narrow interpretation of "administration," the Court will not do so on a motion for judgment on the pleadings. *Cf. Republican Party of North Carolina*, 980 F.2d at 952 (noting that a motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" (citations omitted)). Instead, the Court must consider only whether the MCV Complaint presented facts and circumstances, some of which, if proved, would plausibly fall within the Endorsement's definition of "administration." The Court finds that it did.

### 3. *Whether Counts II and III of the MCV Complaint Fall Outside of the Endorsement's Coverage Provisions Proves Irrelevant to Selective's Duty to Defend.*

Selective also argues that Counts II and III of the MCV Complaint fell outside the Endorsement's coverage of only "damages," because those Counts requested equitable and declaratory — as opposed to monetary — relief. (Def.'s Mem. at 18-19.) Panel Systems responds that Selective's narrow interpretation of "damages" invites the Court to create an exclusion to Selective's duty to defend that related only to Selective's duty to indemnify. (Pl.'s Mem. at 17.) And Panel Systems adds that the types of equitable relief requested in Count II of

21

the MCV Complaint — namely, surcharge, reformation and estoppel — could require payment of monetary damages.[4] (Pl.'s Mem. at 17-18.)

The Court need not address the parties' arguments in considering Selective's duty to defend, as such a duty arises "whenever the complaint alleges facts and circumstance, *some of which* would, if proved, fall within the risk covered by the policy." *Lerner*, 245 S.E.2d at 251 (emphasis added). By Selective's own admission, Count I requested monetary damages, and Panel Systems' negligent acts, errors or omissions in administering the Plan at least partly formed the basis for Count I. Accordingly, whether Counts II and III requested relief covered by the Endorsement proves of no consequence to Selective's duty to defend the MCV Lawsuit as a whole. Thus, unless Selective meets its burden of proving that the Endorsement's enumerated exclusions apply, Panel Systems has stated a plausible claim that the Endorsement obligated Selective to defend Panel Systems in the MCV Lawsuit.

### 4. *The Exclusions to which Selective Cites Fail to Render Implausible Panel Systems' Right to a Defense in the MCV Lawsuit.*

Assuming that the Endorsement's general coverage provisions obligated Selective to defend Panel Systems in the MCV Lawsuit, Selective contends that the Endorsement's enumerated exclusions nonetheless relieved Selective of that duty. (Def.'s Mem. at 19-21.) Specifically, Selective argues that Counts I and III of the MCV Complaint fell within the

---

[4]     Indeed, the Supreme Court has held that litigants suing under § 1132(a)(3) may obtain equitable relief in the form of surcharge, which requires the payment of money. *See Cigna Corp. v. Amara*, 563 U.S. 421, 441-42 (2011) (holding that a district court could order payment of money as a form of "appropriate equitable relief" under § 1132(a)(3), because, throughout history, "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty" and "this kind of monetary remedy . . ., sometimes called 'surcharge,' was 'exclusively equitable'" (citing and quoting *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 464 (1939); Restatement (Third) of Trusts § 95 (2012) (additional citations omitted))).

Endorsement's exclusion of coverage for "'[a]ny 'claim' for benefits to the extent that such benefits are available, with reasonable effort and cooperation of [Panel Systems], from the applicable funds accrued or other collectible insurance'" (the "Available Benefits Exclusion"), because TransAmerica provided excess loss coverage from which Panel Systems could pay the benefits at issue in the MCV Lawsuit. (Def.'s Mem. at 19-20 (quoting and citing Endorsement § A.2.h.; Third Party Compl. Ex. D ("TransAmerica Policy") (No. 3:18-cv-43, ECF No. 17-4) at 5).) Selective further contends that the MCV Lawsuit constituted a lawsuit for "'[d]amages arising out of failure of performance of contract by any insurer'" (the "Insurer Exclusion"), because the damages to the MCV Plaintiffs ultimately resulted from TransAmerica's and the Plan's failure to cover M.L.'s expenses. (Def.'s Mem. at 20 (quoting Endorsement §§ A.2.c.); Def.'s Reply at 10.) And Selective maintains that Count II of the MCV Complaint fell within the Endorsement's exclusion of coverage for "'[d]amages for which [Panel Systems] is liable because of liability imposed on a fiduciary by [ERISA]'" (the "ERISA Fiduciary Exclusion"), because that Count sought equitable relief for Panel Systems' alleged breach of its fiduciary duties under ERISA. (Def.'s Mem. at 20 (quoting Endorsement § A.2.g.).)

Panel Systems responds that Selective wrongly assumes that TransAmerica had to pay for the benefits at issue in the MCV Lawsuit. (Pl.'s Mem. at 19.) Panel Systems points out that TransAmerica also denied coverage for the post-May 31 expenses after finding them medically unnecessary. (Pl.'s Mem. at 19.) And Panel Systems argues that TransAmerica's obligation to cover the damages in the MCV Lawsuit proves irrelevant to Selective's duty to defend, because Selective, alone, had a duty to cover Panel Systems' attorneys' fees and costs in the MCV Lawsuit. (Pl.'s Mem. at 19-20.) With respect to Selective's Insurer Exclusion argument, Panel Systems responds that Selective's conclusory explanation regarding the Insurer Exclusion falls

short of Selective's high burden of proving that the Insurer Exclusion applied to the settlement payout. (Pl.'s Mem. at 20 (citing *Transcon. Ins.*, 367 F. Supp. 2d at 1001).) And Panel Systems contends that the Court cannot consider the TransAmerica Policy or the settlement agreement under the Eight Corners Rule, which limits a court's duty-to-defend analysis to only the underlying complaint and the policy in question. (Pl.'s Mem. at 20-21 (citing *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 156 (4th Cir. 2009); *Premier Pet Prods.*, 678 F. Supp. 2d at 416).) As to the ERISA Fiduciary Exclusion, Panel Systems contends that whether the Exclusion applied proves inconsequential to Selective's duty to defend, because Selective had a duty to defend the remaining counts of the MCV Complaint. (Pl.'s Mem. at 21.)

The Court agrees with Panel Systems that it must consider only the MCV Complaint and the Endorsement in determining whether any of the exclusions relieved Selective of its duty to defend.[5] *Nautilus Ins. Co.*, 968 F. Supp. 2d at 813. Based on those documents, the Court finds that, at this stage, Selective fails to meet its heavy burden of establishing that the Insurer Exclusion or Available Benefits Exclusion applied to the MCV Lawsuit. Indeed, the MCV Complaint provided no allegations that TransAmerica should have covered the excess loss from the post-May 31 expenses at issue. And the Court likewise agrees with Panel Systems that whether the ERISA Fiduciary Exclusion applied to Count II of the MCV Complaint proves inconsequential to Selective's obligation to defend Panel Systems. As mentioned, an insurer must defend an insured so long as at least some of the facts and circumstances alleged in a third-

---

[5]      In its Reply, Selective argues that the Court may take judicial notice of TransAmerica's obligation to pay for the post-May 31 expenses, because Panel Systems made such allegations in its pleadings in the MCV Lawsuit. (Def.'s Reply at 8-9 (citing Fed. R. Evid. 201(c), (f); *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (additional citations omitted)).) However, at least as far as Selective's duty to defend, Virginia law clearly precludes an insurer from relying on extrinsic facts to argue that an exclusion applies. *Nautilus Ins. Co.*, 968 F. Supp. 2d at 813.

party complaint give rise to liabilities covered by the relevant policy. Accordingly, Selective had a plausible duty to defend Panel Systems regardless of whether the liabilities imposed by Count II fell within the ERISA Fiduciary Exclusion.

Because Selective had a plausible duty to defend Panel Systems under the general coverage provisions of the Endorsement, and because Selective fails to establish that the enumerated exclusions in the Endorsement relieved it of that duty, the Court finds that Panel Systems has stated a plausible claim that Selective breached the Endorsement by failing to defend Panel Systems in the MCV Lawsuit.

**B.      Panel Systems' Complaint Alleged a Plausible Right to Indemnification.**

Selective contends that it had no liability for Panel Systems' MCV settlement payout, because such a payout resulted from intentional acts, errors or omissions not involving the administration of the Plan or otherwise fell within the Available Benefits Exclusion, Insurer Exclusion or ERISA Fiduciary Exclusion. (Def.'s Mem. at 11-21.) Panel Systems responds that, for the same reasons that Selective had a duty to defend, Selective had a duty to indemnify Panel Systems for the MCV settlement payout. (Pl.'s Mem. at 8-22.)

Although often parallel to the duty to defend, the duty to indemnify relies on different principles to govern its effectiveness. Indeed, "[u]nlike the duty to defend, which is resolved solely by examining the insurance policy and third-party complaint's allegations, 'a duty to indemnify springs from the facts actually discovered or proven at trial.'" *Capital Envtl. Servs., Inc. v. N. River Ins. Co.*, 536 F. Supp. 2d 633, 645 (E.D. Va. 2008) (quoting *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 435 (E.D. Va. 2000) (additional citations and quotations omitted).) Thus, even if an insurer breaches its duty to defend, it may still argue that

it had no duty to indemnify the damages resulting from the lawsuit. *Id.* (citing *W. All. Ins. Co. v. N. Ins. Co. of N.Y.*, 176 F.3d 825, 830 (5th Cir. 1999) (applying Texas law)).

Here, Panel Systems has yet to disclose the findings, if any, related to the MCV Lawsuit settlement or the settlement agreement itself, though it insists that the parties reached settlement "without any factual findings or admission of liability." (Pl.'s Mem. at 20.) Thus, as Selective argues, Count II of the MCV Complaint, relating to Panel Systems' fiduciary duties under ERISA, possibly formed the basis of the settlement payout, which means the payout potentially falls under the ERISA Fiduciary Exclusion. (Def.'s Mem. at 20-21.) And the declaratory relief sought after in Count III could likewise have formed the basis for the settlement payout, which would remove the payout from the Endorsement's definition of "damages." (Def.'s Mem. at 18-19.) However, based on the facts alleged in Panel Systems' Complaint and its incorporated documents, the Court finds that Panel Systems has stated a plausible claim that Count I — not Counts II or III — formed the basis of the settlement payout, and that the Endorsement covered damages incurred under Count I, thereby obligating Selective to indemnify the payout.

Indeed, as Panel Systems' counsel explained in his April 2018 Letter attached to the Complaint, ERISA litigants seeking payment of denied benefits may not receive equitable relief under § 1132(a)(3), as in Count II of the MCV Complaint, unless monetary relief under § 1132(a)(1)(B) proves inadequate to remedy the harm done. (April 2018 Letter (citing *Korotynska*, 474 F.3d at 106)). Thus, because monetary damages awarded pursuant to § 1132(a)(1)(B) in Count I would have remedied the harms alleged by the MCV Plaintiffs (i.e., the unpaid M.L. benefits), the MCV Plaintiffs could not have received equitable relief under Count II to obtain those same benefits. *See Varity Corp. v. Howe*, 516 U.S. 489, 512-13 (1996) (describing § 1132(a)(3) and similar ERISA provisions as "catchall" provisions, designed to

provide relief when more specific remedies within the statute prove inadequate or unavailable); *Korotynska*, 474 F.3d at 106 (explaining that the Supreme Court in *Varity* "intimated that equitable relief for breach of fiduciary duty under § 1132(a)(3) would not be available for denial of benefits claims appealable under § 1132(a)(1)(B)"). In fact, in Count II of the MCV Complaint, the MCV Plaintiffs recognized the catchall nature of § 1132(a)(3) by characterizing their request for equitable relief under § 1132(a)(3) as an "ALTERNATIVE CLAIM" to Count I. (MCV Compl. at 12.) Accordingly, Count II plausibly would not form a basis for the settlement payout, rendering the ERISA Fiduciary Exclusion inapplicable.

Likewise, although in Count III the MCV Plaintiffs sought a declaratory judgment that they had a right to monetary damages, (MCV Compl. ¶ 80), which would potentially fall outside the Endorsement's coverage of only "damages," such a judgment plausibly would not form the basis for any relief granted, because Count I provided adequate legal grounds for the court to determine the rights of the parties and terminate all controversies in the MCV Lawsuit. *See Zemel v. Rusk*, 381 U.S. 1, 19 (1980) (stating that "the Declaratory Judgment Act . . . 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952))); *Winpisinger v. Watson*, 628 F.2d 133, 141 (D.C. Cir. 1980) ("It is axiomatic that the request for declaratory relief is discretionary with the court, and that the request should be denied where it will not terminate the controversy or serve a useful purpose." (citations and quotations omitted)). Indeed, no matter the legal theories that they evoked, the MCV Plaintiffs ultimately desired payment of the denied M.L. benefits — an injury directly redressable under § 1132 (a)(1)(B) without the need for an additional declaratory judgment. And Selective admits that Count III provided no basis for monetary damages. (Def.'s Mem. at 18-19.) Thus, Panel Systems has stated a

plausible claim that Count I served as the sole grounds for any damages awarded in the MCV Lawsuit and thus the sole grounds for a monetary settlement.

Importantly, as previously explained, the MCV Complaint alleged that Panel Systems committed potentially negligent acts, errors or omissions in administering the Plan that precipitated Panel Systems' breach of the Plan in Count I, meaning that the Endorsement plausibly covered a settlement resulting from Count I. And Selective's argument that Panel Systems' excess loss coverage with TransAmerica precluded Selective's duty to indemnify the settlement payout under the Available Benefits Exclusion proves unpersuasive at this preliminary stage. Although Selective asks that the Court take judicial notice of Panel Systems' Third-Party Complaint against TransAmerica in the MCV Lawsuit in which Panel Systems alleged that TransAmerica should be liable for any unpaid benefits owed to the MCV Plaintiffs, (Def.'s Reply at 8-9), such notice fails to resolve whether TransAmerica *in fact* had an obligation to cover the unpaid benefits. Although a court may take judicial notice of clearly settled facts, a court may not take judicial notice of information that appears "subject to reasonable dispute." Fed. R. Evid. 201(b)(2) advisory committee's note to 1972 proposed rule (noting that "[w]ith respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy" and declining to depart from such a tradition in promulgating Rule 201).

Panel Systems' Third-Party Complaint against TransAmerica contended that TransAmerica should be liable for any unpaid benefits owed to the MCV Plaintiffs, but the Third-Party Complaint also alleged that TransAmerica had properly denied the excess loss coverage. (Third-Party Compl. (No. 3:18-cv-43, ECF No. 17) ¶¶ 22-24.) Thus, even in taking judicial notice of the allegations in Panel Systems' Third-Party Complaint, whether

TransAmerica in fact owed Panel Systems for the damages stemming from the MCV Lawsuit appears subject to reasonable dispute. And the Court declines Selective's invitation to use Panel Systems' pleadings against it without proper briefing, for to do so would punish Panel Systems for pursuing all of its potential rights to relief, even if those pursuits present conflicting arguments. *Cf.* Fed. R. Civ. P. 8(d)(3) (providing that "[a] party may state as many separate claims or defenses as it has, regardless of consistency"). The Court likewise declines to take notice of the TransAmerica Policy without further discovery, for the provisions of the TransAmerica Policy remain subject to dispute. Fed. R. Evid. 201 advisory committee's note to 1972 proposed rule ("[Rule 201] . . . call[s] for dispensing with traditional methods of proof only in clear cases."); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) and 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). And Selective's Insurer Exclusion argument similarly rings hollow, because TransAmerica's obligation to cover the settlement payout remains unclear, and Selective's conclusory arguments fail to overcome the high burden upon insurers to prove that an exclusion applies. *Va. Elec. & Power Co.*, 475 S.E.2d at 266 (citing *Johnson*, 350 S.E.2d at 619). Ultimately, Selective's arguments regarding the applicability of the Insurer Exclusion and Available Benefits Exclusion fail to render implausible Panel Systems' right to indemnification.

Moreover, two aspects of the Endorsement evince the parties' intent that Selective would retain its duty to indemnify even if a lawsuit settled without specific admissions of fact or liability. First, the Endorsement contemplated that Selective, in defending Panel Systems, could "settle any 'claim' or 'suit' that may result [from a negligent act, error or omission in the administration of the Plan]," (Endorsement § A.1.a.), indicating that Selective would indemnify

29

Panel Systems even if a covered lawsuit ended in settlement. Second, the Endorsement provided that Selective had a "right and duty to defend [Panel Systems] against any 'suit' seeking [covered] damages," (Endorsement § A.1.a.), which, as mentioned, obligated Selective to defend Panel Systems "whenever [a third-party] complaint allege[d] facts and circumstance, *some of which* would, if proved, fall within the risk covered by the [Endorsement]," *Lerner*, 245 S.E.2d at 251 (emphasis added). Thus, by agreeing to defend Panel Systems against lawsuits at least partly raising covered damages, and by reserving its right to settle lawsuits against which it had a duty to defend, Selective contemplated instances in which it would settle a lawsuit before its duty to indemnify became clear. Indeed, such a structure makes economic sense for Selective given the cost of litigating a case through summary judgment or trial. Simply because Selective failed to exercise its right and duty to defend Panel Systems in the MCV Lawsuit does not mean that Selective can now argue that the undefined or undisclosed basis for the MCV Lawsuit settlement, alone, relieves it of its duty to indemnify.

Accordingly, because Count I formed the plausible basis for the settlement payout in the MCV Lawsuit, and because the Court could construe the Endorsement to cover the damages arising from Count I, the Court finds that Panel Systems' Complaint alleged a plausible right to indemnification.

### C. Panel Systems' Request for Fees and Costs under Virginia Code § 38.2-209 Does Not Constitute a Separate Cause of Action Upon Which the Court May Grant Judgment to Selective.

To the extent that Selective's Motion for Judgment on the Pleadings challenges Panel Systems' request, pursuant to Virginia Code § 38.2-209, for attorneys' fees and costs in the

instant matter,[6] (*see* Mot. for J. on the Pleadings ("Selective's Motion") (ECF No. 15) (requesting that the Court enter judgment in Selective's favor "as to all claims in the Complaint")), the Court finds such a challenge premature. Indeed, as this Court has previously held, § 38.2-209 does not establish a separate cause of action upon which a court may grant judgment. *Seneca Specialty Ins. Co. v. Dockside Dolls, Inc.*, 2012 WL 3579879, at *4 (E.D. Va. June 22, 2012) (citing *Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F. Supp. 2d 630, 654 (E.D. Va. 2009)), *report & recommendation adopted*, 2012 WL 3562755, at *1 (E.D. Va. Aug. 17, 2012). Rather, "[t]o obtain fees under § 38.2-209, 'a party must notify its adversary in its complaint that it plans to seek costs and attorneys' fees, and the complaint must contain an allegation of bad faith . . . so that the allegation may be investigated during discovery.'" *Id.* (quoting *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, 2008 WL 2857191, at *5 (E.D. Va. July 21, 2008)). Panel Systems has satisfied these requirements. (Compl. ¶¶ 30-49, Prayer for Relief.) Accordingly, the Court will wait until it reaches judgment on Panel Systems' breach-of-contract claim before deciding whether Panel Systems may receive attorney's fees under § 38.2-209.

### V.    CONCLUSION

For the reasons set forth above, the Court DENIES Selective's Motion for Judgment on

---

[6]    Va. Code § 38.2-209 provides that an insured "shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award" upon finding that "the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy." Va. Code Ann. § 38.2-209(A) (West 2018).

the Pleadings (ECF No. 15). An appropriate Order shall issue.

Let the Clerk forward a copy of this Memorandum Opinion to all counsel of record.

_____/s/_____

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: February 25, 2019